So our final argument of the day is 25-8046 Jarvis v. Liggett. Ms. Mooney. Yes. Thank you. You may begin. Good morning, your honors, and may it please the court. Megan Mooney on behalf of the appellant, Mr. Danny Jarvis. I would like to reserve three minutes for rebuttal. In this case, medical professionals ordered that the officers do two things. Take Mr. Jarvis to a dentist and give him oral rinses in the meantime. They did neither. As to the oral rinses claim, we showed that Officer Frank personally denied Mr. Jarvis this medically prescribed care despite Mr. Jarvis' repeated requests for them. Based on this court's precedence in PAW and PRINCE, this is enough to survive summary judgment, and so this court should reverse. Now, I'd like to spend the remainder of my time on the dental appointments claim. Well, let me, before you pass the oral rinses, does it qualify for the level of severity we need that they understood that not giving him an oral rinse was going to result in an aggravation of a serious medical condition that would raise to the level of a constitutional violation? Or is this more like not giving him an aspirin? Your Honor, it rises to the level of a constitutional violation because the prescription was medically ordered by medical professionals, and Officer Frank was not in a position to question that medical treatment. And based on the... Well, if a medical professional says give him a Band-Aid, and they don't give him the Band-Aid, is that a constitutional violation? Potentially not in the case of a Band-Aid, Your Honor. So it's not whether a medical professional says to do it, is it? In this case, it is, Your Honor, especially in light of the fact that by not giving the oral rinses, there's evidence in the record that Mr. Jarvis' health continued to decline. The oral rinses were prescribed at the May 28th appointment, and then he was only given one single salt water rinse, never hydrogen peroxide, and never salt water again. And then at the June 16th appointment, as argued in our reply brief, he was prescribed penicillin, which is a higher form of infection treatment. And therefore, a reasonable juror could find that by not getting the prescribed oral rinses, his health did decline substantially, and so Officer Frank is liable. The issue isn't whether his health declined, it's whether the officer, in not getting him the oral rinse, understood that it was going to result in a serious medical condition, and was deliberately indifferent to that understanding. I mean, that's what we need, right? Yes, Your Honor, and this court's precedent in Paw shows that based on the evidence in this case, it does rise to that level. In Paw, as here, there is a general diagnosis of the individual that the medical professional stated and wrote in discharge instructions that the officer was then aware of, and then proceeded to not follow that general diagnosis and the prescribed medication. And so Officer Frank did know that the oral rinses were medically necessary to treat Mr. Jarvis' diagnosis of general inflammation of the jaw, and by not giving it, he ignored those medical orders as in Paw, and therefore, this court should reverse the summary judgment. You keep saying prescribed. Do you need a prescription to get the oral rinse that he was supposed to take? Not necessarily, Your Honor. Well, wasn't it available? A prisoner could get it himself, could he not? Based on Officer Frank's affidavit, he stated that if an inmate requested the oral rinses, he should have been given it, which in this case just provides more evidence of Officer Frank's deliberate indifference because... Well, could the plaintiff have gotten it himself? Could he have ordered it from, is it called a commissary at the prison? My understanding was the record said he could have gotten the oral rinse himself. Is that correct? No, Your Honor. My understanding is that he would have had to ask Officer Frank to give the oral rinses, and the officers admitted and Mr. Jarvis provided in the record that Mr. Jarvis did indeed request those oral rinses, specifically from Officer Frank on multiple times. Officer Frank only responded that he would check into it and then never gave an oral rinse to Mr. Jarvis, which resulted in him not getting the medically prescribed treatment. And one more question on this, and then we'll let you switch to the other. But in PAW, it wasn't... First of all, it was much more severe. It was an alcohol... Someone who had severe alcoholism and was supposed to be given medication wasn't, but they also refused to take him to the hospital when his symptoms got quite severe. Here, any time the symptoms got bad and it was requested, they took him to the hospital. How is that deliberate indifference? Yes, Your Honor. In this case, you're correct. They took him to the emergency room. However, both Officer Frank and Officer Liggett knew that Mr. Jarvis needed to see a dentist. Well, I'm... Oral rinses. Not an emergency room appointment. And at the emergency room appointment that Officer Frank took Mr. Jarvis to, they prescribed the oral rinses. And then at the second emergency room visit, they prescribed the penicillin. And so the officers were mandated to follow that care. Again, my question is, how can it be deliberate indifference if we compare it to PAW, where here, when the symptoms got severe, they took him to the emergency room? Because, Your Honors, in this case, the officers knew... They don't have to be perfect. They can even be negligent. They just can't be deliberately indifferent. Yes, Your Honor. And in this case, Officer Frank knew of the general diagnosis, knew of the medical order to give the oral rinses, knew that Mr. Jarvis asked for them on multiple occasions, and continued to ignore the medical orders and substitute his lay knowledge or lack thereof for that of a medical professional. And that rises to the level of deliberate indifference to the point that this court should reverse the district court's grant of summary judgment. Does it matter that he was getting ibuprofen and acetaminophen? It matters in the sense that it shows that Officer Frank was personally involved in the denials, but as to whether that impacts the detrimental effect of not getting the oral rinses, the answer is no. Well, does that affect deliberate indifference? No, Your Honors, because in this case, it just shows that Officer Frank was aware he was supposed to be getting medication, was giving some of the prescribed medication, but refusing to give others, which, again, is what happened in this court's case of Paul. OK. Turning to dental appointments, if we accept that the defendants here were not day officers, does the record support that they had any obligation to schedule a dental appointment? Yes, Your Honor, based on the affirmative duty imposed by the Constitution and also through the additional policy at the facility. What affirmative duty imposed by the Constitution? You're going to have to educate me. Your Honor, under the Eighth Amendment, as implied by the Fourteenth Amendment, if an officer knows of a substantial harm to an individual, the Constitution mandates they take action, which is the entire reason that we have the deliberate indifference standard. Well, they took action. They filled out the notes, and they put it for the day officer to see, and the day officer apparently dropped the ball. We're actually made an appointment, but it was, I think, in August. How are they deliberately indifferent here if it wasn't their responsibility to make the appointment? Two responses to that, Your Honor. First, it was their responsibility under the standard operating practice 3.1.3, which stated that detention officers shall follow medical orders as necessary. And second, Your Honors, they were day shift officers. While they were not day shift officers at the time of the emergency room appointment, there's evidence in the record that Officer Frank and Officer Liggett came back on shift and were working in the days following the emergency room appointments. And as this court held in PAW, even if an officer receives discharge papers, puts them in the plaintiff's file, if they then later come back on to shift to see that those medical orders have not been followed, they then are prompted to take action. And by refusing to take action, that amounts to deliberate indifference because they knew of and then proceeded to ignore. Well, if they gave it, assuming probably properly so, that it would be taken care of by the next day shift, and then they don't check again, is that deliberate indifference or is that negligence? In the case that the officers are not aware that the medical orders are not being followed after they give the orders to a medical or to the other officers, that may not be deliberate indifference because they're missing that knowledge piece. However, in this case, Officer Frank and Officer Liggett knew that the medical orders were not being followed. Where's your cite for it? Where's the evidence that they knew the medical that wasn't being followed? Yes, Your Honor. Supplemental Volume 2, pages 42 through 45. That's Mr. Jarvis' affidavit stating that in the days following the emergency room visit, Officer Frank and Officer Liggett repeatedly interacted with Mr. Jarvis. And each time Mr. Jarvis stated that he needed to see a dentist, that his dentist appointment was long overdue and that he was still in excruciating dental pain. At those points, Officer Frank came back on shift on June 1st, which was after the medical ordered period had already passed and no appointment had been scheduled and much less had occurred. And for Officer Liggett, he came back on shift on June 20th, which was within the period of time that was medically ordered, still knew that no appointment had been scheduled and failed to take any action despite Mr. Jarvis' continued complaints. Counsel, weren't the officers aware that other detention center employees were attempting to schedule a dental appointment and eventually did schedule one? If they were aware of that, how could they have been deliberately indifferent? Because, Your Honors, again, even if they believed that other officers were attempting to schedule an appointment, which there's no actual concrete evidence in the record that anyone attempted to schedule a dentist appointment before June 30th for that August 4th appointment, they were still told by Mr. Jarvis that no appointment had been scheduled. Well, wasn't there one scheduled that they had to cancel? Your Honor, the record is a little confusing on this point. I believe you're talking about the site at Supplemental Volume 2, page 35. However, in the light most favorable to Mr. Jarvis, that site states that on June 30th, it was the first time that an appointment was scheduled for August 4th. And this is further corroborated by the inmate request form submitted by Mr. Jarvis on June 30th, which this court can find at Volume 1, pages 81 through 82, where on June 30th, Mr. Jarvis stated that he understood on that day that an appointment was scheduled for August, but that he was requesting an additional earlier appointment be scheduled. I thought there was something to the effect that there was an appointment scheduled that had to be canceled for security reasons. What am I missing? Your Honor, that's one part of that one section on Supplemental Volume 2, page 35. However, there's no other evidence in the record that supports that contention, and so a reasonable jury could understand the evidence to show that no appointment was made. Until June 30th, my opposing counsel stated- But do you have the contrary evidence? I mean, the evidence is that it was scheduled, and his family was aware of it, and for security reasons, they canceled it because they don't want families to know when they're taking someone out of the prison. Do you have contrary evidence to say that no, they never scheduled that? Your Honor, the evidence that I would point to is Volume 1, pages 81 through 82, where on June 30th, Mr. Jarvis stated that he had that appointment in August, so even if there was a different appointment that was scheduled, in the light most favorable to Mr. Jarvis, that would still be an appointment in August, which is much too far outside of that medically. Well, just because there's an appointment in August doesn't mean there wasn't an earlier one. Your Honor, taking Supplemental Volume 2, page 35, the Sheriff's Office admitted before the District Court that no appointment was scheduled until June 30th, and when that's taken in combination with that Volume 1 at page 81 through 82, that shows that the June 30th appointment was for August 4th. Is there anything in the record about how hard it was to get a dental appointment? Sometimes you have to wait a long time, and maybe he sets aside so much time for prison patients. Is there anything in the record about that? Not necessarily, Your Honor, but what is in the record is that Officer Frank and Officer Liggett admitted to never attempting to schedule Mr. Jarvis a dental appointment at any point, and in combination with the understanding that no appointment was scheduled until June 30th— Did they give a reason why they hadn't done it? No, Your Honors. They're stating that it was not their duty. However, as argued in opening and reply, the Constitution, Standard Operating Practice 3.1.3— Well, that says if it's an emergency, it would be their duty, right? Yes, Your Honor. However, taking Mr. Jarvis to the emergency room and then being told by medical professionals that he needed to see a dentist within two and seven days would constitute an emergency. And also, my opposing counsel have conceded that Mr. Jarvis' medical dental care met the objective prong, showing that it was sufficiently serious under the Constitution, and so a reasonable juror could find that it was also— Yeah, but the question is who was supposed to schedule the appointment, right? Yes, Your Honor. And so if it was the day officer, when they come back, they fill out the orders, they put it in the file, and the day officer, for whatever reason, dropped the ball, then you've got the wrong defendant. No, Your Honor. We do not have the wrong defendant because even if it was only day shift officers, again, Officer Frank and Officer Liggett came back in the days following the emergency room appointment as day shift officers, as argued in the reply brief. And this court's precedent in PAW shows that coming back on shift, being aware that no appointment had been scheduled or that the medical orders were not complied with and failing to act is enough to survive qualified immunity at summary judgment. Thank you. Mr. Olive? May it please the Court, Counsel. My name is Prentiss Olive. I'm from the Wyoming Attorney General's Office, and I represent the Appellees Jenkins, Frank, and Liggett in their individual capacities. On January 17, 2025, the district court entered summary judgment in favor of Jenkins, Frank, and Liggett, and we asked that this court would affirm. This is a deliberate indifference case. In this case, Officers Frank and Liggett were asked to take Jarvis to the emergency room. They did that. They gave him access to medical care. After that point, as the court mentioned, they were aware that other day shift officers were scheduling a dental appointment. Based on this evidence… How were they aware of that, that some other officers were actually scheduling a dental appointment? Because that was the general policy and practice within the jail, Your Honor. Okay, so what you're saying is they knew that the policy and practice of the institution would be that someone on day shift would schedule a dental appointment, but they weren't specifically told that anyone was working on it. Is that right? I think that's correct. I believe that in his affidavit, Your Honor, Officer Frank stated that he was aware that other officers were scheduling an appointment, but the record doesn't reflect exactly how he was aware of that. Was there an earlier appointment scheduled that was then canceled? Your Honor, the record is, as counsel mentioned, a little fuzzy. I do want to make a point about this document, the supplemental record to page 35. That actually isn't evidence in this case. If the court looks at it carefully, and we erringly mentioned it in our opening brief, and I looked at it again when preparing for this, it's not evidence. It's a response to a request for production. It's not any sort of sworn testimony, and it simply isn't evidence that the court can consider in this case. And we did raise that issue below in our briefing before the district court on summary judgment. And so that's simply not something that the court can consider here. So we're looking at one appointment scheduled in August? Correct, Your Honor. And the record reflects that Defendants Frank and Liggett were not asked to schedule a dental appointment. There's no evidence whatsoever that anybody put upon them the responsibility of scheduling a subsequent dental appointment. But the plaintiff had complained to them that he wasn't getting a prompt dental appointment as recommended by the emergency room doctor. Is that right? Correct, Your Honor. So why doesn't that put a burden on them? When it wouldn't ordinarily be their job, but it hasn't been done, and they're advised it hasn't been done, don't they have some obligation at that point? Can they just ignore that? Well, Your Honor, if other people are scheduling an appointment, I think it creates some sort of additional duty that just doesn't satisfy the deliberate indifference standard. But if they are informed or think, according to policy, that the dental appointment will be set, and then they learn otherwise, to do nothing, you don't think could justify a finding of deliberate indifference? I don't think it does, Your Honor. And the record also doesn't make clear at that point when they were asked whether there was any sort of dental appointment that may have actually been scheduled by somebody else, whether they were aware of that at all. It just says he mentioned to them and asked them about whether there was a dental appointment that he wanted to see a dentist. I think one other important point on this issue is that a plaintiff keeps saying that the evidence reflects that Frank and Liggett were subsequently day shift officers. And they point to two pieces of evidence. One is Jarvis' affidavit, and it just says that he mentioned to them about going to the dentist. It doesn't say when they were working, whether it was day, whether it was night. And the second piece of evidence they point to is these medication logs. Your Honor, I think they're very unclear. There's some sort of initials, and it's just impossible to determine who the initials are linked to and what's going on. It's impossible? We don't have any verified, authenticated initials by the defendants? Nothing to compare it to? Not that I'm aware of, Your Honor. There's nothing in the record that identifies that this set of initials goes with this particular officer. It's just very, very unclear. Mr. Jarvis said in his affidavit, paragraph 17, I informed Defendants Frank and Liggett numerous times from 5-28-2023 through 7-24-2023 that I was in severe pain and was past the deadline when C.N.P. Gleason ordered I see a dentist. Numerous times. They know he was supposed to see a dentist within a week or two days. That at least shows knowledge, doesn't it? That? That he wasn't getting the appointment that Nurse Gleason said he had to have. It shows knowledge that he hadn't received the appointment, correct, Your Honor? Right. And why wouldn't it also show deliberate indifference? Because it shows that they didn't, it doesn't look like they did anything. Well, Your Honor, because they were aware that that time that the other officers were scheduling an appointment. And as I mentioned Well, counsel, does it make a difference? This is a small facility. As I understand it, there's only seven people there. Shouldn't that make a difference on how we look at this? It's clear that someone, that no one had scheduled a timely appointment. Yes, Your Honor. I think actually that does make a difference. Because there are a limited number of officers with a lot of duties. And no medical staff, correct? Correct, Your Honor. I think that's actually imposing an additional burden upon Frank and Liggett. Somebody else is doing the job already. We're having a small facility. And when they're aware that other people are scheduling an appointment, it's drawing, it's essentially making them have a supervisor role. In fact, I talked to Judge Hartz. They were aware others were scheduling an appointment. And then Mr. Jarvis says, hey, guess what? I don't have an appointment on the schedule that Nurse Gleason said and complained about that and said that he was in severe pain. Why doesn't that make a difference? Why doesn't that overcome this notion, well, others are going to take care of it? Well, I think, Your Honor, because at that point, it's to satisfy the standard of deliberate indifference. I mean, it would really make them have to micromanage the other officers. They're not. All they've got to do is ask a question or make a phone call. We're not talking about something that's going to take hours to take care of. Your Honor, I think it really goes back to the question of whether these individuals had the responsibility to schedule a dental appointment to satisfy the state of mind for disregarding Jarvis' need to have a dental appointment. Could I just – I know we probably want to talk with you about rinses. But if we get to the question of clearly established law on the dental appointment, does Mr. Jarvis need to have a dental appointment case? Your brief seems to call for an on-point case. Does it have to be a delayed dental appointment? Your Honor, I don't know if it specifically has to be a delayed dental appointment. I think it would have to be some sort of an appointment. And with clearly established law, I think really in this case, it has to be some sort of case conferring this responsibility upon officers who weren't supposed to or asked to schedule an appointment to thereafter essentially act as a supervisor. And micromanage other officers to get an appointment scheduled. I mean that is what the plaintiffs really are asking the court to decide in this case is that simply because you take somebody to the emergency room thereafter, you have to micromanage and make sure that other officers are providing that medical care even though you yourself are simply just a normal detention officer. And Your Honor, moving on to the claim. Were the people who were supposed to make the appointment just plain old detention officers? Did they have some special status that the defendants did not have? Not that I'm aware, Your Honor. There is only really one reference to the record or in the record to somebody else who is making a dental appointment. So we don't really know. But that's as far as the record does reflect that other person was just a normal detention officer. Turning to the claim for the oral rinses, Your Honor. I mean it's really important as the court mentioned. I don't think there's any law that establishes that you can just satisfy the standard by saying, well, there's a medical order and therefore not providing oral rinses poses risk of serious harm to the plaintiff. There has to be some knowledge by Frank. And I want to make it clear that this oral rinse claim is only against Frank. It's not against Liggett. And plaintiffs point or make all these statements about some sort of infection. And there's no evidence in the record that Jarvis ever had an infection. They did prescribe oral rinses and these other antibiotics. But there's no evidence in the record that Jarvis actually had an infection and much less that Frank knew that. They prescribed penicillin in his next visit. Doesn't that suggest he had an infection? I don't think so, Your Honor. We don't know why they prescribed penicillin. We do have the doctor's notes and there doesn't seem to be any reference to an infection. So we just we don't know why. And again, that imposes upon the officer some sort of knowledge that the record never establishes that they had. There's no evidence that there was any discussion about why the oral rinses were prescribed. They hadn't any idea about the purposes or that Frank had any idea about the purposes of these rinses. Why isn't it enough that a medical professional says that he needs these oral rinses multiple times a day and then they don't do it? Should they be in a position to second guess the medical professional? Say, oh, it's no big deal. We'll just give them an Advil. But that isn't really their role. They're on notice from a medical professional that he needs this. They're on notice from him that he's in pain. Now, whether it's based on an infection or something else, if someone is in substantial pain and that's what he's saying and there's nothing to contradict to show that he wasn't, then why isn't that deliberate indifference? I mean, the general principle is that a detention officer can't withhold medically prescribed treatment. Why isn't that a violation of clearly established law if they're not complying with the order? Your Honor, because it doesn't establish that they knew that it would pose a risk of serious harm. What about pain? Isn't pain enough? Severe pain. Somebody has severe toothache or gum pain. Why isn't that enough? Well, Your Honor, because there's no evidence that the oral rinses was at all linked to the pain whatsoever. There was evidence because the medical professional said that that's what they should do. Why isn't that the evidence? Because the fact that the medical professional said that he should receive oral rinses doesn't show that the failure to provide oral rinses had anything to do with the pain he experienced. He's not entitled to any inference on that. No, Your Honor. Why not? I think that's really pushing it. I mean, we don't know what those oral rinses were prescribed for. How can you possibly say that they… Well, we know they were prescribed because of his problem with his dental ISD. Right. I mean, to establish that those were then linked to the pain rather than something else, I mean, there's nothing in the record that would require a big jump. And I don't think that's something that the court can do is take that sort of leap. I see my time is up. So I would just ask the court to affirm the district court's entry of summary judgment. Thank you, counsel. Does the appellant have any time left? Pardon? Thank you. Case submitted. Counselor excused. Nice job. Knowing the record well helps and correcting us when necessary is something you need to get used to doing. Thank you. You're the instructor? Well done. So, court is in recess until 9 tomorrow morning.